**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
TROY PITTMAN,

                    Plaintiff,

           -against-

INCORPORATED VILLAGE OF
HEMPSTEAD and MICHAEL HOLLEY,

                   Defendants.
---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
11-CV-4567 (ADS)(AKT)

<u>**APPEARANCES:**</u>

**Abram & Associates**
*Attorneys for the Plaintiff*
62 Nichols Court, Suite 302
Hempstead, NY 11550
    By:  Gregory Dale Abram, Esq., Of Counsel

**Village of Hempstead Attorney's Office**
*Attorneys for the Defendants*
99 Nichols Court, PO Box 32
Hempstead, NY 11551
    By:  Debrah Ann Ubrano-DiSalvo, Village Attorney

**Harris Beach PPLC**
*Attorneys for the Defendants*
333 Earle Ovington Boulevard, Suite 901
Uniondale, NY 11553
    By:   William J. Garry, Esq.
           Keith Michael Corbett, Esq., Of Counsel

**SPATT, District Judge.**

On September 20, 2011, the Plaintiff Troy Pittman (the "Plaintiff) commenced this action

against the Defendants Incorporated Village of Hempstead (the "Village") and Michael Holley

("Holley," and together with the Village, the "Defendants").  Pursuant to 42 U.S.C. §§ 1981 and

1983, the Plaintiff alleges that the Defendants violated his rights under the Fourth Amendment

and Fourteenth Amendment of the United States Constitution by (1) using excessive force constituting an unreasonable seizure of the Plaintiff and (2) falsely arresting the Plaintiff as no probable cause existed to arrest him.

Presently before the Court is the Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 or in the alternative, for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). The Court notes that in their moving papers, the Defendants have included footnotes in violation of this Court's Individual Rule I.A. Notwithstanding this infraction, the Court will consider the Defendants' papers in rendering its decision. However, the Court advises the Defendants' counsel that any future filings that contain footnotes will not be considered by this Court.

For the reasons that follow, the Court denies the motion in part and grants the motion in part.

## I. BACKGROUND

### A. The Admissibility of the Plaintiff's Factual Assertions

At the outset, the Court notes that in reply to the Plaintiff's opposition, the Defendant argues that the Court should disregard the Plaintiff's factual assertions as they are only supported by a declaration by the Plaintiff's attorney, who has no personal knowledge of the underlying facts of this case. However, the Defendants overlook that in his declaration, the Plaintiff's attorney cites to evidence in the record, including the Plaintiff's deposition testimony, in order to support his factual assertions. "Despite the requirement that a declaration be made upon personal knowledge, attorneys often submit declarations in support of or in opposition to a motion for summary judgment for the purpose of introducing documents into the record." Osuna v. Gov't Employees Ins. Co., 11-CV-3631 JFB AKT, 2014 WL 1515563 (E.D.N.Y. Apr. 17,

2014) (quoting <u>Degelman Indus. Ltd. v. Pro–Tech Welding & Fabrication, Inc.</u>, No. 06–CV6346T, 2011 WL 6752565, at *3 (W.D.N.Y. Dec. 23, 2011)).  For this reason, the Court will consider those factual assertions made in the Plaintiff's opposition papers, including those recited in the declaration by the Plaintiff's attorney, so long as they are supported by admissible evidence in the record.  <u>Id.</u>

With that being said, the Court pauses here to discuss the following two exhibits that the Plaintiff includes with his opposition: (1) a printout from the New York State Department of Corrections and Community Supervision's website providing inmate information with regard to the Defendant Holley's son; and (2) an article from the website of the Long Island Press, dated June 4, 2010, allegedly concerning the arrest of Holley's son for shooting a man during a robbery.   In his declaration, based on these two exhibits, the Plaintiff's attorney suggests that the Plaintiff made a comment to Holley about his son's situation, causing Holley to lose his temper resulting in him allegedly using excessive and unreasonable force against the Plaintiff. However, the Plaintiff cites no evidence in his opposition papers to support this speculation.

Indeed, these allegations appear to only be substantiated by the declaration of the Plaintiff's attorney.  The Plaintiff cites to no deposition testimony, affidavits or declarations from either himself or from any other individual who would have had personal knowledge of the facts in question and that support this conjecture.  Thus, "this Court may not consider [these] 'facts' set forth in [the] [P]laintiff's memorandum of law because they were not submitted in proper, admissible form."  <u>Dobson v. Citigroup, Inc.</u>, 03-CV-0680 (SR), 2009 WL 1796579, at *3 (W.D.N.Y. June 24, 2009) (citing Fed. R. Civ. P. 56).

**B. Underlying Facts**

On May 26, 2010, at about 8:45 p.m., the Plaintiff's former girlfriend, Shanel Cummings filed a formal complaint at the Defendant Village's Police Headquarters against the Plaintiff. She claimed that the Plaintiff entered her house while intoxicated and became upset when she asked him to leave. According to Cummings, the Plaintiff then picked up two televisions sets, which were valued at approximately three-hundred fifty dollars, and threw them to the ground, thus breaking them both.

While at the Village's Police Headquarters to make her complaint, Cummings signed a Statement of Allegation/Supporting Deposition (the "Statement"). The Statement set forth facts supporting a New York State Domestic Incident Report (the "Incident Report") and was drawn up by Police Officer Melody Washington. However, apparently, in filling out the Statement, Officer Washington inadvertently listed Cummings's boyfriend as "Troy Cummings" instead of "Troy Pittman," which is the Plaintiff's name. When she realized her error, the Defendant's allege that Officer Washington used white-out in order to change the name from "Troy Cummings" to "Troy Pittman." The Court notes that, on both versions of the form, the Suspect Name Box listed "Troy Pittman" and the Incident Report also alleges that "Troy Pittman" was the intoxicated individual who came to Cummings's apartment and broke two televisions after she told him to leave.

Approximately one month later, on June 21, 2010 at about 4:00 p.m., the Defendant Holley, a police officer, along with another police officer, Daniel P. Larkin, responded to a call for assistance by a Village Crossing Guard at the Franklin School located on South Franklin Street in Hempstead. The Village Crossing Guard had reported that the Plaintiff had walked up

4

to an elementary school girl and solicited her by inviting her back to his apartment to play video games.

When Officer Holley and Officer Larkin arrived, the Village Crossing Guard described the Plaintiff and advised that the Plaintiff had walked down the street toward the Shamrock Gas Station, also located on South Franklin Street in Hempstead. Holley went to the Shamrock Gas Station and found the Plaintiff there. Allegedly, the Plaintiff was visibly intoxicated. Relying on the description he received from the Village Crossing Guard, Holley determined that he had probable cause to take the Plaintiff into custody for soliciting a minor and for being visibly intoxicated. As such, Holley took the Plaintiff into custody, placed him in the back of his police car and drove him to the Village's Police Headquarters.

On the other hand, the Plaintiff maintains that on June 21, 2010, he was simply walking down South Franklin Street in Hempstead alone when Holley, with assistance from Officer Larkin, stopped him and placed him under arrest without a warrant.

Once at the Village's Police Headquarters, the plaintiff gave his name, was fingerprinted and allegedly confined in police custody with one hand handcuffed to a railing located next to a desk in the basement area used for processing. A criminal background check was performed, which disclosed that the Plaintiff had three open cases. One of these cases involved the May 26, 2010 Incident Report filed by Cummings. Subsequently, the Plaintiff was charged and arrested for Criminal Mischief in the Third Degree, a felony offense in violation of New York State Penal Law ("NYSPL") § 145:05-2. According to the Plaintiff, he informed the police officers at the Village's Police Headquarters that he did not even know Cummings.

Following the Plaintiff's arrest, under the supervision of Sergeant Kevin P. Galvin, Holley prepared a Felony Complaint Domestic Violence (the "Felony Complaint"), which was

an accusatory instrument on the behalf of the State against the Plaintiff and served to commence

a criminal action against the Plaintiff in the District Court, Nassau County. Attached to and

incorporated in the Felony Complaint was the revised May 26, 2010 Statement that had been

signed by Cummings and which had been initially prepared by Officer Washington and then

altered by her using white-out to change the name "Troy Cummings" to "Troy Pittman."

Although she is not a named Defendant, the Plaintiff accuses Officer Washington, in

violation of NYSPL § 170.10, of purposely changing the Statement without Cummings

permissions so that it could be included in support of the Felony Complaint. Further, the

Plaintiff claims that by using an allegedly forged document as part of the Felony Complaint,

Holley could not have reasonably believed that probable cause existed to arrest the Plaintiff.

However, as indicated above, the Defendants dispute the Plaintiff's allegations and argue that the

Officer Washington was merely correcting an inadvertent error.

In any event, the Plaintiff's processing took approximately two hours, and then, while in

the custody of the Defendant Holley and Police Officer Christopher Cohen, the Plaintiff was

transferred from the Village's Police Station to the Nassau County Police Detention Center.

Prior to the Plaintiff's transfer, Cohen apparently completed a Physical Condition of Defendant

Questionnaire, on which he noted that the Plaintiff had no apparent injuries. In addition, Holley

and Officer Larkin completed a Prisoner Supervision Log, which was signed by Sergeant Galvin

and which stated that the Plaintiff appeared normal.

According to the Plaintiff, during his transfer from the Village's Police Station to the

Nassau County Police Detention Center, Holley assaulted him. In this regard, the Plaintiff

alleges that while escorting the Plaintiff from the basement area of the Village's Police

Headquarters, Holley hit the Plaintiff on the left side of his head and pushed the Plaintiff to the

6

floor, which caused the Plaintiff to suffer a permanent injury. The Plaintiff also alleges that as a result of this assault, he fell against a wall by the stairwell leading up from the basement area and ended up suffering a minor scrape or scar to the back of his left shoulder.

During this purported incident, the Plaintiff was allegedly unarmed, restrained in handcuffs and shackles and already under arrest. The Plaintiff claims he made no furtive gestures or moves and that while the incident occurred in the presence of several police officers, none of them intervened to assist the Plaintiff. However, the Defendants assert that Holley did not strike or hit the Plaintiff and never used excessive or unreasonable force during the course of the Plaintiff's arrest, transfer or confinement. Rather, according to the Defendants, during his transportation from the Village's Police Headquarters to the Nassau County Police Department Police Detention Center, the Plaintiff began to repeatedly bang and rub his head against the plexi-glass divider which separated the back seat from the front seat in the police vehicle.

Upon discovering that the Plaintiff's head was apparently bleeding, Holley, along with Officer Cohen, drove the Plaintiff in a police car to the Nassau University Medical Center ("NUMC"). At the NUMC, the Plaintiff was treated in the emergency room for a contusion and cut to his left ear which required stitches. He was treated by stitch-tape that was placed on both the top and the inside of his left ear. Following his treatment at the NUMC, that same day, on June 21, 2010, the Plaintiff was finally transferred to the Nassau County Police Detention Center. As part of his intake process, a Nassau County Police Department Physical Condition Questionnaire was completed. This Questionnaire noted that the Plaintiff received a cut on his left ear during the arrest process and that his injuries were apparent.

The next day, on June 22, 2010, the Plaintiff was arraigned before the District Court, Nassau County, based on the Felony Complaint prepared by Holley under Sergeant Gavin's

7

supervision.  The Plaintiff pled not guilty and was appointed defense counsel from Legal Aid.

Bail was set and the Plaintiff remained incarcerated for eleven days after his arraignment, when

he was finally released on his own recognizance.  About eight months later, on February 22,

2011, the criminal case against the Plaintiff was dismissed.

On July 30, 2013, the Plaintiff underwent an Independent Medical Examination,

conducted by the Defendants' expert witness Dr. Robert L. Michaels.  Dr. Michaels observed no

visible scar on the Plaintiff's left ear.  He found no evidence supporting the injury claimed by the

Plaintiff in this case.

## II. DISCUSSION

### A. Legal Standard on a Rule 56(a) Motion for Summary Judgment

It is well-settled that a motion for summary judgment under Fed. R. Civ. P. 56 may be

granted by the Court only if the evidence presents no genuine issue of material fact.  If no such

issue of material fact exists, then the moving party is entitled to judgment as a matter of law.

Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir. 1996); see also Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Fed. R. Civ. P. 56(c).  However, the

Court must endeavor to resolve all ambiguities and draw all reasonable inferences in favor of the

party opposing the motion for summary judgment. Anderson, 477 U.S. 242, at 247–48.

Once a party moves for summary judgment, the non-movant must come forward with

specific facts showing that a genuine issue exists to avoid the motion being granted. West-Fair

Elec. Contractors v. Aetna Cas. & Surety Co., 78 F.3d 61, 63 (2d Cir. 1996); see also Western

World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed. R. Civ. P.

56(e)). Typically, a genuine issue of material fact exists only if "a reasonable jury could return a

verdict for the nonmoving party."  Liberty Lobby, 477 U.S. at 248; see Vann v. New York City,

8

72 F.3d 1040, 1049 (2d Cir. 1995). In addition, mere conclusory allegations, speculation or

conjecture will not avail a party resisting summary judgment.  See Kulak v. City of New York,

88 F.3d 63, 71 (2d Cir. 1996).

**B. As to the Plaintiff's Claims that the Individual Defendant Holley Violated His Fourth and Fourteenth Amendment Rights**

The Plaintiff brings this lawsuit under 42 U.S.C. §§ 1981 and 1983 against the

Defendants alleging that his Fourth Amendment and Fourteenth Amendment rights were violated

because (1) the Defendant Holley used excessive and unreasonable force against him while he

was in the custody of the Village Police; and (2) Holley did not have probable cause to arrest him

and relied on a purportedly forged document to support the Felony Complaint.  The Court will

first consider these claims as against the individual Defendant Holley.

As to the Plaintiff's first claim, "[t]he Fourth Amendment protects individuals from the

government's use of excessive force when detaining or arresting individuals."  Jones v. Parmley,

465 F.3d 46, 61 (2d Cir. 2006).  A police officer's use of force is excessive in violation of the

Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances

confronting [him], without regard to [his] underlying intent or motivation.'"  Maxwell v. City of

New York, 380 F.3d 106, 108 (2d Cir. 2004) (quoting Graham v. Connor, 490 U.S. 386, 397,

109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). In this regard, although "[t]he fact that a person

whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt

justifies the officer's use of some degree of force, [ ] it does not give the officer license to use

force without limit."  Sullivan v. Gagnier, 225 F.3d 161, 165–166 (2d Cir. 2000). Rather, "[t]he

force used by the officer must be reasonably related to the nature of the resistance and the force

used, threatened, or reasonably perceived to be threatened, against the officer."  Id. at 166.

However, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a

judge's chambers, violates the Fourth Amendment.'" Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (quoting Graham, 490 U.S. at 397).

"Because the Fourth Amendment test of reasonableness is one of objective reasonableness, the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." Id. (citations and internal quotation marks and brackets omitted). In deciding whether an officer used excessive force, courts consider "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Id. (citing Graham, 490 U.S. at 396; Jones, 465 F.3d at 61); see also Thomas v. Roach, 165 F.3d 137, 143 (2d Cir.1999). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." O'Bert v. Vargo, 331 F.3d 29, 36 (2d Cir. 2003) (internal quotation marks omitted). In judging an officer's actions, courts must not substitute its own viewpoint. Rather, courts "must judge the officer's actions 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Jones, 465 F.3d at 61 (quoting Graham, 490 U.S. at 396).

The evidence before the Court indicates that the Plaintiff suffered a minor injury to the left side of his head and ear while in the custody of the Defendant Holley and other Village police officers. However, the parties dispute how this injury occurred. On the one hand, the Defendants contend that the injury was self-inflicted by the Plaintiff himself, as Holley claims the Plaintiff repeatedly banged his head against the plexi-glass divider in the police vehicle while

he was being transferred.  On the other hand, the Plaintiff claims that Holley struck him on the

side of the head and pushed him to the ground when the Plaintiff was in the basement area of the

Villages Police Headquarters.  The Plaintiff emphasizes that at the time of the alleged incident,

he was handcuffed and shackled and he was unarmed.

Viewing the evidence, in the light most favorable to the Plaintiff, as the non-moving

party, the Court finds that a genuine issues of fact remain so as to preclude summary judgment in

favor of the Defendant Holley.  Indeed, assuming that the Plaintiff's version of events is true, it

appears to the Court that there would be no need for the Holley to have either struck the Plaintiff

in the head or to shove him if he was already in police custody and restrained.  See Williams v.

Cnty. of Nassau, 10-CV-4815 WFK ARL, 2014 WL 4101545, at *7 (E.D.N.Y. Aug. 18, 2014)

("[The] [p]laintiff also argues that the [d]efendant officers continued to 'hit, kick and strike' him

after he was being handcuffed . . . . On these factual submissions, the Court cannot find as a

matter of law that it was objectively reasonable for officers to have inflicted these alleged

injuries on [the] [p]laintiff.") (collecting cases); Johnson v. City of N.Y., 05–CV–2357, 2006

WL 2354815, at *5 (S.D.N.Y. Aug.14, 2006) (collecting cases) ("[T]here surely would be no

objective need to stomp and kick an individual already under police control.").

Moreover, "[a]ssessments of credibility and choices between conflicting versions of the

events are matters for the jury, not for the court on summary judgment."  Tafari v. McCarthy,

714 F. Supp. 2d 317, 364 (N.D.N.Y. 2010) (quoting Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d

Cir. 1996)). "[A] narrow exception" to this general rule exists in cases where a "plaintiff relies

almost exclusively on his own testimony, much of which is contradictory and incomplete" so

that a court must find that "no reasonable jury would credit the plaintiff's testimony."  Id. (citing

Jeffreys  v. City of New York, 425 F.3d 549, 554 (2d Cir. 2005).  However, in the Court's view,

this is not such a case, because even though the Plaintiff here relies almost solely on his own

testimony to support his allegations that Holley used excessive force against him, his account of

what transpired is not so contradictory or incomplete to prevent the possibility that a reasonable

jury could credit his testimony.  For these reasons, the Court denies the Defendants' motion for

summary judgment on the Plaintiff's excessive and unreasonable force claim as against Holley.

Concerning the Plaintiff's second claim that he was falsely arrested, "[i]n New York, the

claim colloquially known as 'false arrest' is a variant of the tort of false imprisonment, and that

tort is used to analyze an alleged Fourth Amendment violation in the § 1983 context."  Ostroski

v. Town of Southold, 443 F.Supp.2d 325, 334 (E.D.N.Y. 2006).  To prevail, a plaintiff must

prove four elements: "(1) the defendant intended to confine him, (2) the plaintiff was conscious

of the confinement, (3) the plaintiff did not contest the confinement, and (4) the confinement was

not otherwise privileged."  Broughton v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335

N.E.2d 310 (1975), cert. denied, 423 U.S. 929, 96 S. Ct. 277, 46 L. Ed. 2d 257 (1975) (internal

citations omitted). The only element in dispute in the instant case is the last element—that is, the

Defendants contend that the arrest was privileged as a matter of law because it was supported by

probable cause.  "Where there is no dispute as to the knowledge of the officers, whether probable

cause existed may be determined as a matter of law."  Wahhab v. City of New York, 386 F.

Supp. 2d 277, 287 (S.D.N.Y. 2005).

Of importance, even if probable cause to arrest is ultimately found not to have existed, an

arresting officer will still be entitled to qualified immunity from a suit for damages if he or she

can establish an 'arguable probable cause' to arrest."  Escalera v. Lunn, 361 F.3d 737, 743 (2d

Cir. 2004). "Arguable probable cause exists 'if either (a) it was objectively reasonable for the

officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" <u>Id.</u>

Also of importance, "[a] false arrest claim does not survive summary judgment merely because there is a dispute as to whether the claimant committed the underlying charged crime." <u>Arum v. Miller</u>, 331 F. Supp. 2d 99, 109 (E.D.N.Y. 2004). Rather, "[w]hen determining whether probable cause exists courts 'must consider those facts available to the officer at the time of the arrest and immediately before it.'" <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 162 (2d Cir. 2002) (quoting <u>Lowth v. Town of Cheektowaga</u>, 82 F.3d 563, 569 (2d Cir. 1996)); <u>see also</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) ("The relevant question . . . is the objective (albeit fact-specific) question whether a reasonable officer could have believed [the officer's conduct] to be lawful, in light of clearly established law and the information the . . . officers possessed.").

"In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." <u>Weyant</u>, 101 F.3d at 852 (citing <u>Dunaway v. New York</u>, 442 U.S. 200, 208 n.9, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979)). Moreover, "[a] police officer has probable cause to arrest if the information he has gathered was obtained from a person 'who it seems reasonable to believe is telling the truth.'" <u>Strawn v. Holohan</u>, 104-CV-1292 GLS/DRH, 2008 WL 65586, at *4 (N.D.N.Y. Jan. 4, 2008) (quoting <u>Miloslavsky v. AES Engineering Soc., Inc.</u>, 808 F. Supp. 351, 355 (S.D.N.Y.1992)); <u>see also</u> <u>Wahhab</u>, 386 F. Supp. 2d at 287 ("Probable cause will generally be found to exist when an officer is advised of a crime by a victim or an eyewitness.").

In the current case, the Plaintiff contends that Holley had no probable cause to arrest him when he was initially detained on June 21, 2010 on South Franklin Street in connection with his alleged solicitation of a minor. However, the undisputable evidence before the Court demonstrates that Holley was responding to a call for assistance from a Village Crossing Guard at the Franklin School, who reported seeing the Plaintiff approach an elementary school girl and invite her back to his apartment to play video games. The Village Crossing Guard gave Holley the Plaintiff's description and told Holley the direction that the Plaintiff was heading. Based on this, Holley tracked down the Plaintiff, found him nearby at the Shamrock Gas Station and observed that he was visibly intoxicated. Thus, Holley decided to take the Plaintiff into custody, at which time he performed a criminal background check on the Plaintiff and discovered that the Plaintiff had three open cases against him, including the May 26, 2010 case involving the destruction of Cummings's televisions. Accordingly, Holley arrested the Plaintiff for Criminal Mischief in the Third Degree in violation of NYSPL § 145.05, which makes it a crime to damage the property of another in an amount exceeding two hundred and fifty dollars.

In the Court's view, even viewing the evidence in the light most favorable to the Plaintiff, Holley clearly had probable cause when he took the Plaintiff into custody based on the information he received from the Village Crossing Guard. See, e.g., Wahhab, 386 F. Supp. 2d at 287 (finding that probable cause existed to arrest the plaintiff so as to warrant dismissal of the plaintiff's false arrest claim where the police officers came to the scene in responded to a 911 call from a security guard and, once on the scene, received a description of the crime from an off-duty police officer who was a witness); Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 419–20 (S.D.N.Y. 2002) (holding the police officers had probable cause to arrest the plaintiff for the crime of burglary in the third degree where (1) the first police officer relied on a

14

description of the suspect from a witness's 911 call and (2) after the suspect fled the crime scene, the second police officer apprehended the plaintiff a block away from the scene based on a radio call from the first police officer, who gave him the description of the suspect and the direction the suspect was fleeing).

Holley also had probable cause to arrest the Plaintiff in connection with the May 26, 2010 case, despite the fact that the Plaintiff told the Village police officers he did not know Cummings. Of importance, "once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti v. New York City Transit Auth., 941 F.2d 119, 128 (2d Cir. 1991). This is because, "[i]t is up to the fact finder to determine whether a defendant's story holds water, not the arresting officer." Krause v. Bennett, 887 F.2d 362, 372 (2d Cir.1989). Hence, "probable cause exists even where it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that information." Bernard v. United States, 25 F.3d 98, 103 (2d Cir. 1994). Indeed, in this case, there was no reason that Holley was required to believe the Plaintiff's assertion that he did not know Cummings.

Further, to the extent that the Plaintiff attempts to create a material issue of fact by arguing that Holley somehow should have known that Cummings's Statement was allegedly forged by Officer Washington, the Court finds that argument without merit. In this regard, there is no evidence before the Court that suggests that Holley was aware that Officer Washington changed the name "Troy Cummings" to "Troy Pittman" or that he would have any reason to believe that Officer Washington would forge the Statement. In addition, the Plaintiff ignores the fact that the first page of the Incident report names the Plaintiff and both the original and the altered version of the Statement list "Troy Pittman" in the Suspect Name Box, thereby clearly

linking the Plaintiff to the alleged crime. Therefore, even assuming Holley noticed that "Troy

Cummings" had been replaced with "Troy Pittman" in the Statement, it would not have been

unreasonable for Holley to assume that the Plaintiff was the appropriate suspect and that Officer

Washington had simply made an inadvertent error when drafting the Statement, which she later

corrected using correction fluid, commonly referred to as "white out."

Accordingly, the Plaintiff has offered no evidence to cast doubt on Holley's reliance on

the Village Crossing Guard or on the Incident Report and attached Statement prepared by Officer

Washington and signed by Cummings. Therefore, the Court grants summary judgment in favor

of Holley and dismisses the false arrest claim that the Plaintiff has brought against him pursuant

to 42 U.S.C. § 1983.

In sum, viewing the facts in the light most favorable to the Plaintiff, the Court finds that

(1) material issues of fact exist concerning the Plaintiff's excessive and unreasonable force

claim, but that (2) the Plaintiff has failed to establish that a material issue of fact exists with

respect to his false arrest claim against Holley. Thus, the Court grants summary judgment in

favor of Holley as to the false arrest claim, but denies to grant summary judgment in favor of

Holley on the excessive and unreasonable force claim.

**C. As to the Plaintiff's 42 U.S.C. § 1983 Monell Claim against the Defendant Village**

In order to impose 42 U.S.C. § 1983 liability on a government entity, like the Defendant

Village here, a plaintiff must first demonstrate "the existence of a municipal policy or custom."

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d. 611 (1978).

"The policy or custom need not be memorialized in a specific rule or regulation." Kern v. City

of Rochester, 93 F.3d 38, 44 (2d Cir. 1996) (citing Sorlucco v. N.Y.C. Police Dep't, 971 F.2d

864, 870 (2d Cir.1992)). Instead, such municipal policies "include[ ] the decisions of a

government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, __ U.S. __, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011). Also, in "limited circumstances," a municipality can be liable under 42 U.S.C. § 1983 for its failure "to train certain employees about their legal duty to avoid violating citizens' rights. . . ." Id. For this reason, a policy, custom or practice of the entity may be inferred where "the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 208, 226 (2d Cir. 2004) (quoting Kern, 93 F.3d at 44).

In this case, the Plaintiff has offered no evidence in his opposition papers to suggest that any unconstitutional custom and/or policy exists. Rather, the Plaintiff seems to contend that based on the alleged actions of Holley and Officer Washington in this case, an inference should be drawn that the Village condoned such behavior by its police officers by failing to adequately train them. These allegations are unsupported by any evidence in the summary judgment record before the Court beyond that evidence that concerns the Plaintiff's own case. As such, "[the] Plaintiff['s] failure to proffer specific facts showing the [Village's] failure to train its employees or anything more than a single incident is fatal to [his] Monell claims." Smith v. City of New York, 388 F. Supp. 2d 179, 188 (S.D.N.Y. 2005). Indeed, courts in the Second Circuit have frequently recognized that "[n]either the mere recitation of a failure to train municipal employees nor of a single incident . . . is sufficient to raise an inference or the existence of a custom, policy, or practice." Johnson v. City of New York, 12-CV-2484 ENV LB, 2012 WL 2394894, at *1 (E.D.N.Y. June 25, 2012); see also Zadrowski v. Town of Plainville, 3:09-CV-1367 DJS, 2013 WL 5435491, at *7 (D. Conn. Sept. 30, 2013) ("[A] finding of inadequate training and causation must be 'based on more than the mere fact that the misconduct occurred in the first place.'")

(quoting <u>Amnesty America v. Town of West Hartford</u>, 361 F.3d 113, 130 (2d Cir. 2004)); <u>Berry</u>

<u>v. Vill. of Millbrook</u>, 815 F. Supp. 2d 711, 720 (S.D.N.Y. 2011) ("[The] [p]laintiff still has not

suggested that any municipal policymaker or municipal policy or custom was responsible for

violations of any litigants' rights apart from [the] [p]laintiff's own alleged experience, and proof

of a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>,

unless proof of the incident includes proof it was caused by an existing, unconstitutional

municipal policy, which policy can be attributed to a municipal policymaker.") (citing <u>Oklahoma</u>

<u>City v. Tuttle</u>, 471 U.S. 808, 823–24, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) (internal

quotation marks and brackets omitted);

Consequently, as the Plaintiff complains of only one incident without proof of any policy

or custom, the Village cannot be held liable pursuant to 42 U.S.C. § 1983.  Therefore, the Court

grants summary judgment in favor of the Village and dismisses it from this lawsuit.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Defendants' motion for summary judgment on the Plaintiff's

excessive and unreasonable use of force claim as against the Defendant Holley is denied; and it

is further

**ORDERED** that the Defendants' motion for summary judgment on the Plaintiff's false

arrest claim as against the Defendant Holley is granted; and it is further

**ORDERED** that the Defendants' motion for summary judgment on the Plaintiff's <u>Monell</u>

claim is granted and the Defendant Village is dismissed from this action; and it further

**ORDERED** that the parties are advised to notify the Court in writing of the estimated length of the trial in light of the Court's ruling on the Defendants' summary judgment motion by Friday, August 29, 2014.

**SO ORDERED.**

Dated: Central Islip, New York
August 27, 2014

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge